# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 05-681


**ZULA MAE FUSELIER, ET AL.**

**VERSUS**

**DEPARTMENT OF  TRANSPORTATION AND DEVELOPMENT OF THE STATE OF LOUISIANA**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. C-2002-337
HONORABLE JOEL GERARD DAVIS, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***


## JOHN D. SAUNDERS
## JUDGE


**\*\*\*\*\*\*\*\*\*\***


Court composed of John D. Saunders, Oswald A. Decuir, and Glenn B. Gremillion, Judges.


**AFFIRMED.**

**Elizabeth Brooks Hollins**
**Department of Justice**
**901 Lakeshore Dr. #820**
**Lake Charles, LA 70601**
**(337) 491-2844**
**Counsel for Defendant/Appellant:**
**Dept. of Transportation & Develop. of the State of LA.**

**James David Cain, Jr.**
**Lundy & Davis**
**P. O. Box 3010**
**Lake Charles, LA 70602**
**(337) 439-0707**
**Counsel for Plaintiff/Appellee:**
**Zula Mae Fuselier**
**Katherine Paige Fuselier**

**David Paul Bruchhaus**
**Mudd & Bruchhaus**
**P. O. Box 1510**
**Cameron, LA 70631**
**(337) 775-5063**
**Counsel for Plaintiff/Appellee:**
**Zula Mae Fuselier**
**Katherine Paige Fuselier**

**SAUNDERS, Judge.**

This case arises out of an automobile accident. A father and son were burned to death in the accident. Plaintiff, wife and mother of the decedants, filed suit individually and on behalf of her minor daughter. A jury trial was held and the daughter was awarded general and specific damages. Her mother, however, was awarded only specific damages. Plaintiffs filed a motion for judgment notwithstanding the verdict (JNOV). That motion was granted and defendant appealed. We affirm.

**FACTS AND PROCEDURAL HISTORY**

On July 24, 2001, Calvin Fuselier and his two minor children, Katherine and Tyler, were traveling north on La. Hwy. 26. Mr. Fuselier was employed as a custodian by the Jefferson Davis Parish School Board. He also delivered diesel and gasoline to farmers during his spare time. On this date, Mr. Fuselier, after finishing his work as custodian, took his children with him on his delivery so that he could spend more time with them.

Shortly after entering Allen Parish, the right wheels of Mr. Fuselier's truck entered the shoulder of La. Hwy. 26 with the maximum distance the wheels went off of the roadway being approximately three feet. As he corrected and attempted to re-enter the roadway, the vehicle flipped over. Katherine Fuselier was ejected but her father and brother were trapped inside. The truck caught fire and Calvin and Tyler burned to death.

Zula Mae Fuselier, wife of Calvin Fuselier and mother of Katherine and Tyler Fuselier, filed suit against the State of Louisiana, Department of Transportation and Development, individually and on behalf of her minor daughter, Katherine, who survived the accident. A jury trial commenced on January 26, 2004. The jury award

to Katherine for the death of her father was $125,000.00 for loss of love, affection and companionship and $125,000.00 for past and future mental pain and suffering. For her personal injuries, Katherine was awarded $100,000.00 for past, present, and future pain and suffering as well as $39,658.91 for past medical expenses. As a result of the death of her husband, Zula Mae Fuselier was awarded $372,781.00 for past and future loss of economic support and $7,031.96 for funeral expenses. The jury found Mr. Fuselier fifty percent at fault in causing the accident.

Immediately after the jury verdict was read, a bench conference was held. Noting that no general damages were awarded to Zula Mae Fuselier for the deaths of her husband and son, the trial judge offered to instruct the jury in that regard. The attorneys, however, agreed to address the issue in post-trial motions. The judge signed the judgment then plaintiffs filed a Motion for Judgment Notwithstanding the Verdict (JNOV). That motion was heard on September 27, 2004. It was granted with the trial judge awarding Zula Mae $500,000.00 for the wrongful death of her husband, $250,000.00 for the survival claim of her husband, $500,000.00 for the wrongful death of her son, and $250,000.00 for the survival claim of her son. The trial judge reduced these awards by 50% based upon the jury's apportionment of fault. Defendant moved for a new trial but was denied. This appeal followed.

**ASSIGNMENTS OF ERROR**

1) The trial court's ruling was not reasonable when it cast the State of Louisiana, Department of Transportation and Development with 50% liability when AASHTO standards set the minimum shoulder slopes at 25% and the shoulder slopes at the point of the accident were 5% and 11% making the shoulder slopes in question more than twice less steep than required by AASHTO.

2) The trial court's ruling was not reasonable when it cast the State of Louisiana, Department of Transportation and Development with 50% liability when the testimony and evidence presented by both the

plaintiffs and the defendants set forth that on July 24, 2001, the date of the accident, the shoulders of the road were solid at the point in which the wheels on the right side of the gasoline truck driven by Calvin Fuselier left the roadway, due to the fact that the AASHTO approved reclaimed aggregate shoulders hardened in the summer heat, due to its asphalt contents.

3)      The trial court erred by giving credence to the testimony of the plaintiffs' accident reconstructionist and highway engineer, when the documentary and objective evidence presented at trial so contradict the testimony of those experts, that a reasonable fact-finder could not give credence to their testimony and this court should find manifest error even though the trial court's finding is purportedly based on a credibility determination.

4)      The trial court erred in finding that the routine maintenance on the road shoulder in question by the Department of Transportation and Development, created an unreasonable risk of harm, when the testimony and evidence presented at trial demonstrated that six months had lapsed between the grading of the shoulder in March 2001 and the subsequent grading of the road shoulder a week before the accident on July 24, 2001.

5)      The trial court's ruling was not reasonable or based on evidence when the evidence demonstrated that the shoulder was constructed of acceptable materials, was inspected on a regular basis, was maintained in a timely manner (correcting problems that are created by a force external to DOTD - a vehicle traversing the shoulder and making it irregular), and DOTD had fulfilled its obligations under the law and its own internal rules.

6)      The trial court erred in substituting its judgment of the facts and determinations of credibility for that of the jury.

7)      The trial court erred in failing to grant the motion for new trial after finding reasons to grant the plaintiffs' Judgment Not Withstanding the Verdict and the additur.

8)      The trial court erred in finding that Mr. Fuselier and his son lived after the accident, when the jury made the determination that sufficient evidence did not exist to make a damage award for that claim.

**STANDARD OF REVIEW**

Findings of the trial court are reviewable on appeal, and the appellate standard of review has been clearly established.  A trial judge's findings of fact will not be

disturbed unless they are manifestly erroneous or clearly wrong. *Stobart v. State, through Dep't of Transp. & Dev.,* 617 So.2d 880 (La. 1993). "Absent 'manifest error' or unless it is 'clearly wrong,' the jury or trial court's findings of fact may not be disturbed on appeal." *Sistler v. Liberty Mut. Ins. Co.,* 558 So.2d 1106, 1111 (La. 1990). "If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 1112. Furthermore, when reviewing questions of law, appellate courts are to determine if the trial court's ruling was legally correct or not. *Cleland v. City of Lake Charles*, 01-1463 (La.App. 3 Cir. 3/5/03), 840 So.2d 686, *writs denied*, 03-1380, o3-1385 (La. 9/19/03), 853 So.2d 644, 645.

**ASSIGNMENTS OF ERROR NOS. 1, 2, 4, & 5.**

In these assignments of error, defendants argue that DOTD should not be found 50% liable because the shoulder was correctly sloped, composed of authorized material, and properly maintained. We first note that neither the jury nor the trial judge specifically stated the grounds for imposing 50% liability on DOTD. After reviewing the record, we conclude that liability is warranted due to the improper slope of the shoulder. We find no problem with the composition of the shoulder and make no determination regarding whether improper maintenance caused the excessive slope. DOTD is liable for the improper slope regardless of whether it was due to improper maintenance or improprieties in the original construction.

Plaintiff's expert, Dr. Peter Parsonson, calculated the slope of the shoulder to be 10.9% at the point where Mr. Fuselier attempted to steer his vehicle back onto the roadway. Defendant argues that AASHTO allows up to a 25% slope for shoulders

4

and cites jurisprudence wherein this 25% slope was deemed recoverable. According to these sources, defendant argues that DOTD should not be liable because the slope of the shoulder was less than half as steep as the permissible value. This argument lacks merit.

First, AASHTO does not allow a 25% slope for shoulders. The AASHTO manual provides that a 25% slope is permissible for foreslopes, the area between the shoulder and ditch, not for the shoulders themselves. The AASHTO requirement for shoulder slope is that the actual slope be in reasonable conformance with the highway design specifications. In this case, the design specifications for La. Hwy. 26 called for a shoulder slope of 5%, and further provided that the engineer, in his discretion, could increase that value up to a maximum of 8%. Given that the slope at the point where re-entry was attempted was 10.9%, the actual slope was more than double what was called for in the design of the highway. Accordingly, we find that the jury and trial judge were not clearly wrong in finding DOTD liable because the slope of the shoulder was not in reasonable conformance with the design specifications as required by AASHTO. Second, the jurisprudence cited by defendant is not controlling in this matter. Those cases deal with improperly sloped foreslopes or backslopes, the area across the ditch from the roadway. Because the issue in this matter is the slope of the shoulder itself, cases dealing with other areas of the roadway and ditch do not guide our analysis.

Defendant further argues that if a 25% slope is allowed for foreslopes it is implicitly allowed for shoulders. This argument is unpersuasive. The foreslope and shoulder are different parts of the highway with different design requirements just as the roadway and the shoulder are different parts with different design requirements.

5

The AASHTO manual specifically requires that shoulder slope be in reasonable conformance with the design specifications for the highway. The slope of the shoulder at issue here was not in reasonable conformance with the design specifications and the jury and trial judge were not clearly wrong in so finding. These assignments lack merit.

**ASSIGNMENT OF ERROR NUMBER** 3

Defendant argues that no reasonable fact finder could have given credence to plaintiffs' expert accident reconstruction and highway engineer witnesses because their testimony was contradicted by documentary and objective evidence. We disagree. Both the jury and the trial judge found the testimony of these two witnesses to be credible and we cannot overturn that finding unless it is manifestly erroneous. Defendant attempts to discredit Dr. Peter Parsonson's testimony by arguing that he found the shoulder to be defective despite the fact that AASHTO authorizes a 25% slope on highway shoulders. As previously noted, AASHTO allows for a 25% slope on foreslopes but states that shoulders must be sloped in reasonable conformance with design specifications. The highway plan introduced into evidence calls for a shoulder slope of 5% and excerpts from the AASHTO manual call for the shoulders to be maintained in reasonable conformance with that plan. Accordingly, Dr. Parsonson's conclusion that AASHTO does not sanction a shoulder slope of 11% and that the shoulder of La. Hwy. 26 was defective because it was not in reasonable conformance with the design plans and AASHTO is supported by the record. Neither the jury nor the trial judge were manifestly erroneous in giving credence to his testimony.

Jerry Wallingford, plaintiffs' expert in accident reconstruction, testified that the accident could have been avoided if the shoulder was sloped at 5%, was not composed of loose aggregate, and was hard and wider. He also testified that the left turn made by Mr. Fuselier when attempting to re-enter the highway contributed to the accident by causing the gasoline to shift to the right changing the truck's center of gravity. Mr. Fuselier never drove far enough into the ditch to reach the loose aggregate; therefore, the part of the shoulder he traversed was hard and wide enough. The fact remains, however, that the shoulder was sloped at 11% at the point where the left turn back to the roadway was attempted. As such, the first element for avoiding the accident proposed by Mr. Wallingford was not satisfied and his conclusions regarding the cause of the accident are supported by the record as are Dr. Parsonson's. The fact finders were not manifestly erroneous in giving credibility to this testimony.

Defendant further argues that Mr. Wallingford is not credible because he did not attribute the roll over to the left turn executed by Mr. Fuselier. Mr. Wallingford did not deny that this turn had a role in the accident; he simply did not attribute the entire accident to this factor. Simply because Mr. Wallingford did not attribute all fault to Mr. Fuselier does not destroy the credibility of his testimony. He stated that DOTD erred by not maintaining the 5% slope and that the error was compounded when the left turn caused the gasoline to slosh and change the truck's center of gravity. The jury and trial judge agreed that Mr. Fuselier was partially to blame as evidenced by the equal apportionment of liability. They were not manifestly erroneous to give credence to this testimony. This assignment lacks merit.

7

**ASSIGNMENT OF ERROR NUMBER 6**

Here, defendant argues that the trial court erred by substituting its judgment for the credibility determinations made by the jury. Because the credibility of plaintiffs' experts was specifically challenged in another assignment and because defendant contends that the jury's failure to award survival damages and general damages to Ms. Fuselier was based upon credibility determinations, our discussion of the remaining assignments of error will encompass this issue. As will be seen by the following discussion, we find that the trial judge did not substitute his judgment for that of the jury. Rather, he concluded that the jury's failure to award damages based upon uncontradicted evidence was wrong. We agree.

**ASSIGNMENT OF ERROR NUMBER 7**

In this assignment of error, defendant argues that the trial judge erred in failing to grant its motion for new trial after finding grounds to grant plaintiffs' motion for JNOV. As previously noted, following rendition of the jury's verdict, the trial judge offered to instruct the jury regarding the fact that no general damages were awarded to Zula Mae Fuselier. The attorneys, however, agreed to address the issue in post-trial motions. The trial judge granted plaintiffs' motion for JNOV and awarded Zula Mae $500,000.00 for the wrongful death of her husband, $250,000.00 for the survival claim of her husband, $500,000.00 for the wrongful death of her son, and $250,000.00 for the survival claim of her son. Defendant argues that the trial judge erred first in granting plaintiffs' motion because there was insufficient evidence pertaining to the loss suffered by Ms. Fuselier following the death of her husband and son. Defendant then argues that the trial judge erred again in denying its motion for new trial. We disagree.

A JNOV may be granted on the issue of liability, damages, or both. La.Code Civ.P. art. 1811. The grounds upon which a JNOV may be granted are not provided by statute; however, the supreme court has set forth the criteria to be used in ruling on such motions. That court stated that:

> a JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.

*Joseph v. Broussard Rice Mill, Inc.*, 00-0628 (La. 10/30/00), 772 So.2d 94, 99.

DOTD contends that the jury did not award general damages to Ms. Fuselier because she did not testify about the loss of her husband and five-year-old son; therefore, the trial judge, in granting plaintiffs' motion as it related to these issues, erred by substituting its judgment for the jury's credibility determinations and/or because the facts and inferences did not overwhelmingly weigh in Ms. Fuselier's favor. This argument is unpersuasive. The trial judge considered all of the evidence and listened to Ms. Fuselier's testimony. While more verbal testimony specifying the effects of the deaths of her husband and son would have been preferable, several photographs demonstrating the nature of the family were introduced into evidence. These photographs depict a close, loving family. They show a family that attended church together and participated in extracurricular activities. The pictures also

chronicle a husband and wife spending time together on family outings and holiday activities. Furthermore, Ms. Fuselier's testimony revealed that she and her husband worked together to prepare their children for school. In short, this evidence depicted a very loving bond between Ms. Fuselier and her husband and son. The trial judge examined this uncontradicted evidence and concluded that the jury was wrong in failing to award general damages to Ms. Fuselier. All facts and inferences point to the fact that Ms. Fuselier suffered a terrible loss. The trial judge did not evaluate or weigh the evidence. It was uncontradicted. Accordingly, we find no error in the trial judge's grant of plaintiffs' motion for JNOV.

Defendant also argues that a new trial is warranted because the award to Ms. Fuselier eclipsed the award to Katherine Fuselier and is at odds with the damages awarded by the jury. We have already determined that there was no error in the granting of the JNOV. Once the trial judge made this determination, an independent assessment of damages must be made under the particular facts of the case. *Anderson v. New Orleans Pub. Serv., Inc.*, 583 So.2d 829 (La.1991). The trial judge considered the evidence presented at trial and concluded that Ms. Fuselier enjoyed a close loving relationship with her husband and son. He then examined relevent jurisprudence and awarded Ms. Fuselier $500,000.00 for the loss of her husband and $500,000.00 for the loss of her son. After reviewing the record and relevant jurisprudence, we find that that the trial judge did not abuse his discretion in making this award. This assignment lacks merit.

**ASSIGNMENT OF ERROR NUMBER EIGHT**

In this assignment of error, defendant argues that the trial judge improperly substituted its judgment for credibility determinations by the jury in granting

10

plaintiffs' motion for JNOV as it related to the survival claims for Calvin and Tyler Fuselier. Dr. Patricia Post, Katherine's treating psychologist, testified that Katherine told her she heard her father screaming when flames engulfed the truck and she told her dad to get her brother out of the truck. The jury, however, failed to award damages for the survival claims of Calvin and Tyler Fuselier and the trial judge concluded they were wrong to do so.

Defendant argues that Dr. Post's testimony was hearsay and not credible or correct. We first note that defendant did not object to Dr. Post's testimony. Accordingly, the evidence was accepted into evidence and the trial judge was free to consider it in ruling on plaintiffs' motion for JNOV. Furthermore, the fact remains that the events relayed to Dr. Post by Katherine were uncontradicted. The trial judge considered this evidence and determined that it pointed so strongly and overwhelmingly in favor of Ms. Fuselier that a JNOV was proper. He awarded $250,000.00 for the survival claim of Calvin Fuselier and $250,000.00 for that of Tyler Fuselier. We agree with that ruling. An eight year old girl spoke openly to her psychologist of hearing screams coming from the burning truck. This testimony is uncontradicted and was not objected to. Accordingly, we find no error in the trial judge's award of damages for the survival claims of Calvin and Tyler Fuselier. This assignment lacks merit.

**CONCLUSION**

The judgment of the trial court is affirmed. Costs of this appeal are assessed against defendant.

**AFFIRMED.**